UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

STEVEN MILLER JOHNSON,

    Plaintiff,

v.                                          Case No. 17-C-15

NGOZI CATHERINE OBIORA, et al.,

    Defendants.

## DECISION AND ORDER GRANTING SUMMARY JUDGMENT

Plaintiff Steven Miller Johnson, who is representing himself and is currently a state sentence, filed a complaint under 42 U.S.C. § 1983, alleging Defendants Ngozi Obiora, Rodney Weary, and Dmitriy Chester were deliberately indifferent to his serious medical needs. This matter comes before the court on Defendants' motion for summary judgment. For the reasons below, the motion will be granted and the case dismissed.

### BACKGROUND[1]

At all times relevant to this case, Plaintiff Steven Johnson was confined at Milwaukee Secure Detention Facility (MSDF). Defendants' Proposed Findings of Fact (DPFOF), ECF No. 27, at ¶¶ 1, 7. Defendant Weary is an MSDF Correctional Officer, Chester is an Advanced Practice Nurse Prescriber at MSDF, and Obiora was an Advanced Practice Nurse Prescriber at MSDF from October 20, 2010, through January 1, 2016. *Id*. at ¶¶ 2–4.

---

[1] Because Johnson failed to respond to Defendants' proposed findings of fact as required by Civil Local Rule 56 and did not submit proposed findings of his own, Defendants' proposed findings of fact will be deemed admitted for the purposes of summary judgment. *See Smith v. Lamz*, 321 F.3d 680, 683 (7th Cir. 2003) ("We have consistently held that a failure to respond by the non-movant as mandated by the local rules results in an admission.").

Johnson was transferred to MSDF from a county jail on October 6, 2015. On October 13, 2015, Johnson presented to an appointment with Obiora to address his hypertension and enlarged prostate. At the appointment, Johnson mentioned that he was compliant with his medications and was on Warfarin, a medication used to treat and prevent blood clots. Obiora instructed Johnson to continue using his current medications and increased Johnson's dose of Warfarin. Johnson did not request a lower bunk or lower tier restriction at the appointment. *Id.* at ¶ 22. Instead, Johnson submitted a health services request (HSR) after the appointment, requesting a lower tier and lower bunk restriction. ECF No. 40-1 at 1. A health services unit (HSU) employee responded to the HSR on October 14, 2015, asking if Johnson had been assessed by a provider for the restrictions. *Id.* The following day, Johnson submitted another HSR stating that he had a lower bunk and lower tier restriction at the county jail due to his pulmonary embolism and damaged lungs. *Id.* at 2. An HSU employee responded to this HSR on October 16, 2015, indicating that a review of Johnson's records did not reveal that he received these restrictions at the county jail. *Id.* On October 23, 2015, Obiora saw Johnson for a physical examination. At this appointment, Obiora ordered a lower bunk and lower tier restriction for Johnson because she believed he needed the restrictions and could not verify whether they were already in place. DPFOF at ¶ 23; ECF No. 31-1 at 65.

On December 28, 2015, Obiora saw Johnson in HSU after he slipped and fell on his right shoulder. Obiora noted Johnson's shoulder was slightly red and tender, and had limited range of motion. She gave him Tylenol and ice, and scheduled a follow-up appointment for the next day. DPFOF at ¶ 26. At the follow-up appointment, Johnson reported pain and a tingling sensation in his right arm. Though Obiora did not observe swelling or bruising, she noted that Johnson had limited range of motion. She diagnosed Johnson with right shoulder pain, prescribed Gabapentin for

the pain, and instructed Johnson to apply an ice pack as needed to reduce inflammation. *Id*. at ¶ 27. Obiora left state service on January 1, 2016, and no longer provided medical care to inmates at MSDF. *Id*. at ¶ 29. Medical staff saw Johnson on two occasions in early January 2016 regarding his complaints of shoulder pain and a shooting pain in his elbow.

On January 11, 2016, Johnson fell in the day room during meal time. *Id*. at ¶ 8. Officer Weary asked Johnson if he was injured, and Johnson responded that he was "fine." *Id.* at ¶ 9. Johnson did not ask for any medical attention and did not tell Weary he was injured. *Id.* Because Weary believed Johnson was not hurt, he did not file an incident report. *Id*. at ¶¶ 10–11. Johnson submitted a health services request later that day, complaining that his right Achilles tendon was swollen. Health services staff saw Johnson regarding his Achilles complaints on January 14, 2016.

Johnson presented to an appointment with Chester on January 15, 2016, for a chronic pain evaluation. *Id*. at ¶¶ 37–38. During a physical examination, Johnson showed normal range of motion of his right shoulder. Chester noted that Johnson's left ankle was stable, his left Achilles tendon was intact, and Johnson could walk without assistance. *Id*. at ¶ 38. Chester issued lower bunk and lower tier restrictions, ordered a right shoulder x-ray and physical therapy for the chronic pain in his right shoulder, prescribed Hydrocholorothiazide to treat Johnson's high blood pressure, and increased Johnson's Gabapentin prescription. *Id*. at ¶¶ 39–40. The findings of Johnson's right shoulder x-ray were normal. *Id*. at ¶ 42.

Medical staff continued to treat Johnson's right shoulder and left leg, ankle, and foot complaints. On February 9, 2016, Johnson saw a nurse practitioner student under Chester's direct supervision. *Id*. at ¶ 44. Chester assessed Johnson with right shoulder pain caused by a possible nerve impingement that was improving. He noted the pain was secondary to sprain or strain, and

3

would be evaluated further in physical therapy. Chester prescribed Tylenol and increased the Gabapentin dosage. *Id*. Johnson began physical therapy for his shoulder on February 25, 2016, which continued through April 2016. *Id.* at ¶¶ 47, 50.

At a March 15, 2016 appointment, Johnson reported constant left foot pain. *Id*. at ¶ 51. Chester noted Johnson had full range of motion and no deformity. Chester ordered a left foot x-ray, which had normal results. *Id*. at ¶¶ 51–52. On April 13, 2016, Chester saw Johnson again for his complaints of right shoulder, ankle, foot, and lower back pain. *Id*. at ¶ 56. Chester noted full range of motion and no deformity or crepitus. Because Johnson had not improved over the three months of treatment, Chester diagnosed Johnson with chronic pain; prescribed muscle rub, Lidocaine cream, and an extra blanket; and instructed Johnson to return to HSU as needed. After Johnson continued to show no improvement with physical therapy, on May 16, 2016, Chester referred Johnson to an outside orthopedic surgeon and for an MRI. *Id.* at ¶ 60. Johnson was scheduled for an appointment with an orthopedic surgeon on June 12, 2016. On June 17, 2016, Johnson was transferred to Dodge Correctional Institution and no longer received treatment from MSDF medical staff.

## LEGAL STANDARD

Summary judgment is appropriate when the movant shows there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In deciding a motion for summary judgment, the court must view the evidence and make all reasonable inferences that favor them in the light most favorable to the non-moving party. *Johnson v. Advocate Health & Hosps. Corp.*, 892 F.3d 887, 893 (7th Cir. 2018) (citing *Parker v. Four Seasons Hotels, Ltd.*, 845 F.3d 807, 812 (7th Cir. 2017)). The party opposing the motion for summary judgment must "submit evidentiary materials that set forth specific facts showing that there is a genuine issue

for trial." *Siegel v. Shell Oil Co.*, 612 F.3d 932, 937 (7th Cir. 2010) (citations omitted). "The nonmoving party must do more than simply show that there is some metaphysical doubt as to the material facts." *Id.* Summary judgment is properly entered against a party "who fails to make a showing to establish the existence of an element essential to the party's case, and on which that party will bear the burden of proof at trial." *Austin v. Walgreen Co.*, 885 F.3d 1085, 1087–88 (7th Cir. 2018) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

## ANALYSIS

Johnson asserts a number of deliberate indifference claims against Defendants. First, he alleges Obiora was deliberately indifferent in failing to prescribe him lower bunk and lower tier restrictions during his October 13, 2015 appointment and was deliberately indifferent to his shoulder injury. Second, he alleges Officer Weary was deliberately indifferent to his medical needs when Johnson fell in the day room on January 11, 2016. Finally, Johnson alleges Chester was deliberately indifferent in failing to provide him with lower bunk and lower tier restrictions and was deliberately indifferent in failing to diagnose Johnson's chronic pain.

The Eighth Amendment prohibits "cruel and unusual punishments." U.S. Const. amend. VIII. It imposes a duty on prison officials to take reasonable measures to guarantee an inmate's safety and to ensure that inmates receive adequate medical care. *Farmer v. Brennan*, 511 U.S. 825, 832 (1994). A prison official's "deliberate indifference" to a prisoner's medical needs or to a substantial risk of serious harm violates the Eighth Amendment. *Id.* at 828; *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). This does not mean, however, that every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment. An inmate's claim for deliberate indifference must establish "(1) an objectively serious medical condition; and (2)

an official's deliberate indifference to that condition." *Gomez v. Randle*, 680 F.3d 859, 865 (7th Cir. 2012). As shown below, none of his claims has any merit based on the undisputed facts of record.

**A. Nurse Prescriber Obiora**

Johnson asserts Obiora was deliberately indifferent to his medical needs because she did not order lower bunk and lower tier restrictions when he initially saw her on October 13, 2015. Instead, she did not confirm that he needed the restriction until ten days after the initial appointment and ordered the restrictions on October 23, 2015. This 10-day delay in prescribing the restrictions does not rise to the level of deliberate indifference. *See Gayton v. McCoy*, 593 F.3d 610, 620 (7th Cir. 2010) ("[D]eliberate indifference is simply a synonym for intentional or reckless conduct, and that 'reckless' describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred."). Once Obiora became aware of Johnson's need for the restrictions, Johnson offers no evidence that Obiora deliberately delayed ordering them or that the 10-day delay detrimentally affected, unnecessarily prolonged, or exacerbated his pain. *See Williams v. Liefer*, 491 F.3d 710, 714–15 (7th Cir. 2007) ("In cases where prison officials delayed rather than denied medical assistance to an inmate, courts have required the plaintiff to offer 'verifying medical evidence' that the delay (rather than the inmate's underlying condition) caused some degree of harm." (citing cases)). That is, a plaintiff must provide "medical evidence that tends to confirm or corroborate a claim that the delay was detrimental." *Id.* Johnson has not done so here. Without this evidence, there is no basis upon which a jury could find that the delay in ordering the restrictions caused any injury or that Obiora was deliberately indifferent to his medical needs with respect to the lower bunk and lower tier restrictions.

6

Johnson also asserts that Obiora was deliberately indifferent to his shoulder injury after his December 28, 2015 fall. Even assuming Johnson's shoulder injury constitutes a serious medical condition, Johnson has not demonstrated that Obiora was deliberately indifferent. Deliberate indifference requires more than negligence or even gross negligence; it requires that the defendants knew of, yet disregarded, an excessive risk to Johnson's health or safety. *Farmer*, 511 U.S. at 835, 837; *see also Estelle*, 429 U.S. at 104. It is not enough to show that prison officials merely failed to act reasonably. *Gibbs v. Franklin*, 49 F.3d 1206, 1208 (7th Cir. 1995). "A state officer is deliberately indifferent when he does nothing . . . or when he takes action that is so ineffectual under the circumstances that deliberate indifference can be inferred." *Figgs v. Dawson*, 829 F.3d 895, 903 (7th Cir. 2016) (internal citations omitted). In this case, Obiora was anything but indifferent to Johnson's shoulder injury. The record shows that Obiora examined Johnson's shoulder immediately after the fall, provided ice and Tylenol, and scheduled a follow-up appointment for the following day. At that appointment, Obiora assessed Johnson with right shoulder pain, gave him ice, and prescribed Gabapentin for pain. Obiora left state service three days later, on January 1, 2016, and no longer provided medical treatment to inmates at MSDF. In light of this evidence, Johnson has failed to establish that Obiora was deliberately indifferent to his medical needs.

**B. Correctional Officer Weary**

Johnson asserts Weary refused to write an incident report after Johnson fell in the day room on January 11, 2016, which delayed Johnson in receiving medical care. But Weary was not deliberately indifferent to Johnson's serious medical needs because he did not know about them. After the fall, Johnson advised Weary that he was fine. Johnson does not dispute that he ever asked Weary for medical attention or told him that he was injured. In short, Johnson has not established

that Weary "knowingly exposed [him] to a substantial danger to his health for no good reason." *Egebergh v. Nicholson*, 272 F.3d 925, 928 (7th Cir. 2001). In addition, the fact that Weary did not file an incident report did not cause a delay in Johnson receiving treatment. After the fall, Johnson completed a health service request, and was seen by nursing staff three days later, on January 14, 2016. Accordingly, summary judgment on Johnson's claim against Weary is appropriate.

**C. Nurse Prescriber Chester**

Johnson maintains Chester was deliberately indifferent in failing to provide him with lower bunk and lower tier restrictions. But this argument is a nonstarter. Chester did, in fact, re-order Johnson's restrictions when he first saw Johnson on January 15, 2016, and therefore was not deliberately indifferent to Johnson's need for a lower bunk/lower tier dual restriction.

Johnson also asserts that Chester was deliberately indifferent in his treatment of Johnson's chronic pain. But Chester provided Johnson with frequent and proper medical care. Chester saw Johnson on a monthly basis to treat Johnson's complaints of pain and ordered x-rays as well as physical therapy to determine the source of the pain. After concluding these treatment methods were not improving Johnson's condition, Chester diagnosed Johnson with chronic pain and scheduled Johnson for an appointment with an outside orthopedic surgeon. No reasonable jury could conclude that any delay in resolving Johnson's complaints was caused by Chester's deliberate indifference. Indeed, the medical staff's "chosen course of treatment should be given a period of time to become effective" before considering another method. *Arce v. Barnes*, No. 1:13-cv-01777, 2015 WL 5567149, at *2 (S.D. Ind. Sept. 21, 2015). While Johnson may disagree with the type of treatment he received and the rate at which he received it, mere disagreement with the medical staff's chosen course of treatment does not amount to deliberate indifference under the Eighth Amendment. *See*

8

*Snipes v. DeTella*, 95 F.3d 586, 591 (7th Cir. 1996). Johnson has not established that Chester's treatment decisions were "such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible actually did not base the decision" on his medical judgment. *Burton v. Downey*, 805 F.3d 776, 785 (7th Cir. 2015) (citation omitted). In sum, Johnson has failed to establish that Chester was deliberately indifferent to his medical needs.

## CONCLUSION

Johnson has failed to present any evidence on which a reasonable jury could find that any one of the defendants acted with deliberate indifference to his serious medical needs. Defendants' motion for summary judgment (ECF No. 25) is therefore **GRANTED** and this case is **DISMISSED**. The Clerk is instructed to enter judgment accordingly.

Dated this   18th   day of September, 2018.

s/ William C. Griesbach  
William C. Griesbach, Chief Judge  
United States District Court